IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Fathers & Daughters Nevada, LLC, | § § § § | |
| *Plaintiff,* | § | |
| v. | § § | Case No. ___4:16-cv-01315___ |
| Does 1–10, anonymous users participating in file-sharing swarm identified by hash ending in DC8F, | § § § § § | |
| *Defendants.* | § § | |

PLAINTIFF FATHERS & DAUGHTERS NEVADA,
LLC'S *EX PARTE* MOTION TO TAKE PRE-26(F)
CONFERENCE DISCOVERY OF THIRD-PARTY
INTERNET SERVICE PROVIDERS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................2
II. NATURE AND STAGE OF THE PROCEEDING ...........................................4
III. STANDARD OF REVIEW ................................................................5
IV. A SHORT SUMMARY OF THE ARGUMENT ...........................................5
V. ARGUMENT................................................................................7

   A. Plaintiff Has Made a Concrete Showing of a Prima Facie
      Claim of Actionable Harm ............................................... 7
   B. Plaintiff's Has Proposed Clear and Specific Discovery
      Requests...................................................................... 9
   C. Absence of Alternative Means to Obtain the Information ............. 11
   D. Need for the Subpoenaed Information to Advance the Claim........ 12
   E. Plaintiff's Interest in Obtaining the Defendants' True
      Identities Outweighs Defendants' Interest in Remaining
      Anonymous................................................................. 13

   VI. CONCLUSION ........................................................................15

# TABLE OF AUTHORITIES

## CASES

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007)........................................................................8

*Columbia Ins. Co. v. Seescandy.Com*,
185 F.R.D. 573 (N.D. Cal. 1999).........................................................9

*Davis v. Duncan Energy Partners LP*,
801 F. Supp. 2d 589 (S.D. Tex. 2011)..................................................5

*Garrett v Comcast Comms., Inc.*,
No. 3:04-cv-693 (N.D. Tex. July 23. 2004) .......................................10

*General Universal Sys., Inc. v. Lee*,
379 F. 3d 131 (5th Cir. 2004) ..........................................................7, 8

*In re Verizon Internet Servs., Inc.*,
257 F. Supp. 2d 244 (D.D.C. 2003).....................................................13

*Patrick Collins, Inc. v. John Doe 1*,
945 F. Supp. 2d 367 (E.D.N.Y. 2013) ..................................................8

*Qwest Comms. Int'l, Inc. v. Worldquest Networks, Inc.*,
213 F.R.D. 418 (D. Colo. 2003) .........................................................12

*Recording Indus. v Verizon Internet*,
351 F. 3d 1229 (D.C. Cir. 2003).........................................................10

*Sony Music Entm't Inc. v. Does 1–40*,
326 F. Supp. 2d 556 (S.D.N.Y. 2004) ............................................ 9, 15

*W. Coast Prods., Inc v Does 1-351*,
No. 4:12-cv-00504 (S.D. Tex. July 3, 2012) ............................. 4, 9, 15

*Well Go USA, Inc. v. Unknown Participants*,
No. 12-cv-00963 (S.D. Tex. Sept. 25, 2012).........................................5

## STATUTES

17 U.S.C. § 512(h) ...............................................................................10

47 U.S.C. § 551(1)(a)......................................................................7, 14

47 U.S.C. § 551(c)(1)(B) ......................................................................11

47 U.S.C. § 551(c)(2).............................................................................12

47 U.S.C. § 551(d) .................................................................................12

MOTION FOR PRE-26(F) CONFERENCE DISCOVERY

RULES

FED. R. CIV. P. 26(d)(1) .......................................................................5, 6

FED. R. CIV. P. 26(f) ............................................................................5

FED. R. CIV. P. 45 ...............................................................................1


OTHER AUTHORITIES

2015 Special 301 Report, Executive Office of the President of the
United States ......................................................................................2

Rep. Smith: Law Needed to Control Cyber Piracy, Austin
American-Statesman (Nov. 28, 2011) ...................................................3

Zentner, *Measuring the Impact of File Sharing on the Movie
Industry: An Empirical Analysis Using a Panel of Countries*,
University of Texas at Dallas (Mar. 22, 2010) .......................................2

MOTION FOR PRE-26(F) CONFERENCE DISCOVERY

Plaintiff, Fathers & Daughters Nevada, LLC ("F & D"), hereby moves this Court *ex parte* requesting an order granting limited pre-26(f) conference discovery.  Specifically, Plaintiff seeks to issue subpoenas to Internet Service Providers ("ISPs") pursuant to FED. R. CIV. P. 45 for information sufficient to identify each Defendant (currently listed as Does 1–10) including name, current and permanent address, telephone number, and e-mail address.  Each Doe Defendant has been observed and confirmed as using torrent networks and repeatedly distributing an infringing copy of Plaintiff's copyrighted motion picture.  However, Plaintiff has only been able to identify each Defendant by their Internet Protocol "("IP") address shown in Exhibit 2 to the Complaint and attached here as Exhibit 1.  It is therefore necessary for Plaintiff to obtain the subscriber name corresponding to the IP address.  ISPs routinely provide the identity of a subscriber corresponding to a particular IP address under the Digital Millennium Copyright Act, and in fact, the ISPs often provide a special facsimile number for facilitating service of this type of subpoena.  Sample subpoenas are attached as Exhibit 2.  F & D also seeks to serve subpoenas on any other entity identified as a provider of Internet services to Doe Defendants in response to a subpoena.[1]

---

[1]  Some ISPs lease their allocated IP addresses to other intermediary ISPs.

Plaintiff will use any obtained information solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint.

## I.    INTRODUCTION

A 2015 U.S. Executive Report noted that unauthorized distribution of motion picture recordings via the Internet is doing tremendous damage to film producers, distributers, and copyright holders.[2]  This economic harm is illustrated in the graphs below, showing the precipitous decline in video and DVD sales coinciding with the rise of BitTorrent file sharing.[3]

---

[2]  Ambassador Froman, 2015 Special 301 Report, Executive Office of the President of the United States (App. at 42) (finding unauthorized recordings of first-run motion pictures result in economic harm not only in the market where the film was originally shown, but in other markets as well and that governments must not create "a domestic environment that offers a safe haven for piracy on the Internet"), *available at* https://ustr.gov/sites/default/files/2015-Special-301-Report-FINAL.pdf.

[3]  Zentner, *Measuring the Impact of File Sharing on the Movie Industry: An Empirical Analysis Using a Panel of Countries*, at 2 & 23, University of Texas at Dallas (Mar. 22, 2010), *available at* http://ssrn.com/abstract=1792615 ("Our findings, in short, indicate that the unauthorized downloading of movies decreases video sales by a substantial amount.") (App. at 27 & 48).

MOTION FOR PRE-26(F) CONFERENCE DISCOVERY



According to Texas Representative Lamar Smith,

> Because the U.S. produces the most intellectual property, our nation has the most to lose if we fail to address the problem of rogue sites. According to estimates, IP theft costs the U.S. economy more than $100 billion annually and results in the loss of thousands of American jobs.[4]

F & D is a victim of such piracy.

Plaintiff owns the copyright for the movie Fathers and Daughters, a

---

[4] Smith: Law Needed to Control Cyber Piracy, Austin American-Statesman (Nov. 28, 2011), *available at* http://www.statesman.com/news/news/opinion/smith-law-needed-to-control-cyber-piracy/nRhYk/ (App. at 24).

major mainstream motion picture starring Russel Crowe and Amanda Seyfried ("Motion Picture").  [Dkt. 1 ¶¶ 27–34 & Ex. 1.]  Although the movie has not yet been released in the U.S., F & D has already identified 10 IP addresses located in the Southern District of Texas copying and distributing F & D's Motion Picture, without license, via an online peer-to-peer ("P2P") torrent network system.  [Dkt. 1 ¶¶ 40–47 & Ex. 2.]

## II.   NATURE AND STAGE OF THE PROCEEDING

In an attempt to stop this unauthorized distribution of the Motion Picture, Plaintiff filed a Complaint alleging copyright infringement.  [Dkt. 1.]  For each Defendant, F & D was only able to identify the Defendant infringer by his or her IP address.  [*Id*.]  As explained in the Complaint, only the ISP knows which subscribers were associated with the IP addresses at the relevant time.   As such, F & D named pseudonymous "Doe" defendants associated with the IP addresses as is convention.  *See, e.g.*, *W. Coast Prods., Inc. v Does 1–351*, No. 4:12-cv-00504 (S.D. Tex. July 3, 2012) (Doc. 30) (App. at 6) (Atlas, J.).

Now, F & D is filing this *ex parte* motion to serve subpoenas on the ISPs so that Plaintiff may obtain the identities of the account holders corresponding to the IP addresses at the times Plaintiff observed the infringement.  Having the ability to issue a subpoena on the relevant ISP

will allow Plaintiff to contact the subscriber and, if necessary, amend the Complaint and serve the same.

## III.   STANDARD OF REVIEW

FED. R. CIV. P. 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" unless the Court orders otherwise, and this Court has adopted a "good cause" standard to determine whether to permit such expedited discovery. *Davis v. Duncan Energy Partners LP*, 801 F. Supp. 2d 589, 596 (S.D. Tex. 2011).

When considering if "good cause" exists for motions to identify the accounts associated with IP addresses, this Court considers whether: "(1) a concrete showing of a prima facie claim of actionable harm by the plaintiff; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the user's expectation of privacy." *Well Go USA, Inc. v. Unknown Participants*, No. 4:12-cv-00963, 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25, 2012) (Doc. 12) (App. at 11–12).

## IV.   A SHORT SUMMARY OF THE ARGUMENT

F & D has set forth in detail a *prima facie* case that its copyright has been, and is being, infringed by people whom Plaintiff can only identify by

their IP addresses.  Plaintiff has filed suit and wishes to use discovery requested in this motion to identify the true identities of these infringers causing it harm.  But the default Federal Rules—written for the typical case where the true identity of the defendant is known to plaintiff—specify that discovery can only be initiated after the plaintiff and defendant's conference.  *See* 26(d)(1).  Yet, to confer, Plaintiff needs the sought after discovery to know with whom to confer.

To break this "Catch 22," F & D proposes obtaining specific, limited, information regarding the IP addresses at the times of observed infringement from the only entities who can identify the putative infringers, the ISPs.  And in an attempt to minimize any burden on these ISPs, Plaintiff is requesting minimal information it needs to advance the litigation—information ISPs regularly provide to copyright owners in the Digital Millennium Copyright Act ("DMCA") context.  Because the ISPs only keep the needed data for a limited time, without the relief sought under this motion subpoenas, Plaintiff's opportunity to identify the Defendants may soon be lost forever.

Finally, while Defendants may be hoping to maintain the anonymity the Internet affords to infringe with impunity, Does 1–10 should not expect it.  Defendants, who have opened their computers to semi-anonymous

peoples from around the world in order to copy F & D's movie, should not be surprised that their activity may be made public.  Indeed, by statute, the ISPs initially and regularly notify subscribers that their information is subject to disclosure via court order.  47 U.S.C. § 551(1)(a); *see also* ISP Privacy Notices at Exhibit 3–4.   And Defendant's willful violation of copyright laws is just the type of activity that would invite such a court order.

In short, in order for Plaintiff to advance its claim and seek relief from the harm done by Defendants—people who should have no expectation of privacy for their illegal activity—the Court should allow the narrowly tailored discovery to the sole source of the information, the ISPs.

## V.   ARGUMENT

The following subsections establish why the good cause factors all favor allowing Plaintiff's requested early third-party discovery.

### A.   Plaintiff Has Made a Concrete Showing of a Prima Facie Claim of Actionable Harm

"To establish a prima facie case of copyright infringement, a copyright owner must prove (1) ownership of a valid copyright, and (2) copying by the defendant of constituent elements of the work that are original." *General Universal Sys., Inc. v. Lee*, 379 F. 3d 131, 141 (5th Cir. 2004) (internal quotes, citations, and modifications removed).   At the

pleading stage, a plaintiff simply must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). And "plausible" simply means having an appearance of truth or reason, a lower threshold than a "reasonable likelihood" standard. *See Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 376 (E.D.N.Y. 2013).

As to the first element, copyright interest, Plaintiff's filed copyright certificate for Fathers and Daughters [Dkt. 1 Ex. 1] which "is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *General Universal Sys.,* 379 F. 3d at 141.

As to the second element, evidence of copying, F & D has engaged the services of Maverickeye UG ("Maverickeye"), a company who specializes in monitoring and detecting the illegal distribution of material, such as motion pictures, via P2P distribution systems. [Ex. 5, Wyde Decl. ¶ 2.] Maverickeye's software detected and logged the IP addresses copying Plaintiff's Motion Picture at the dates and times shown in the exhibit attached to the complaint. [Dkt. 1 Ex. 2; Ex. 5, Wyde Decl. ¶ 3.]

Further, through a geolocation feature of the Maverickeye Software, it was confirmed that all IP addresses were located in the Southern District of Texas. [Ex. 5, Wyde Decl. ¶ 4.]

MOTION FOR PRE-26(F) CONFERENCE DISCOVERY

### B.    Plaintiff's Has Proposed Clear and Specific Discovery Requests

The relevant inquiry is whether "Plaintiffs' discovery request is . . . sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court." *See Sony Music Entm't Inc., v. Does 1-40*, 326 F. Supp. 2d. 556, 566 (S.D.N.Y. 2004) (citing *Columbia Ins. Co. v. Seescandy.Com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999)).

Here, Plaintiff's discovery request satisfies this requirement by asking for the subscriber information that corresponds to an IP address at a specific date and time where Plaintiff's agents observed infringing activity. It is reasonable to suspect that this subscriber conducted the alleged activity, but even if the IP addresses cannot pinpoint a person responsible for a particular file download this Court has found that:

> Nevertheless, it is reasonable to use an IP address as a starting point to obtain identifying information about a Doe Defendant who, through digital forensic means, has been tied to the torrent swarm in issue.  The identifying information allows Plaintiff to make a good faith investigation into whether a particular individual has a reliable factual connection to the IP address associated with the swarm.

*W. Coast Prods.*, No. 4:12-cv-00504 (Doc. 30) (App. at 8).  At a minimum,

obtaining the subscriber information will allow Plaintiff's counsel to assess whether pursuit of claims against each subscriber is in fact feasible once the individual associated with the IP address has been identified.[5]   As discussed in the following subsection, Plaintiff has no other way to do this.

The subpoenaed information is narrowly tailored to get only the required information, and as this is the type of information normally kept by ISPs in the regular course of business, the request should impose minimal burden on the ISP.  Indeed, for almost 20 years, in other situations, Congress has provided copyright holders the ability to serve subpoenas for this type of information regarding works stored on an ISP server without having to file a lawsuit or motion a court.  *See* DMCA, Pub. L. No. 105–304, 112 Stat. 2860 (Oct. 28, 1998) (codified at 17 U.S.C. § 512(h)).[6]   As

---

[5]   The situation is analogous to capturing the license plate of a car that committed a violation.  The driver is likely the owner, but, if not, the owner is the person most liable to know who was driving his or her car at the time of the incident.

[6]   However, this provision does not appear to contemplate the situation where an ISP is acting as a conduit for P2P file sharing, which is understandable because at the time of the DCMA P2P software like BitTorrent was "not even a glimmer in anyone's eye."  *Recording Indus. v Verizon Internet*, 351 F. 3d 1229, 1238 (D.C. Cir. 2003) (citation omitted).  It appears this issue has not been decided in this district or circuit. See, e.g., *Garrett v Comcast Comms., Inc.*, No. 3:04-cv-693, n.1 (N.D. Tex. July 23. 2004) [Dkt. 15] ("This Court is not bound to follow the precedent of *RIAA v. Verizon*.") (App. at 2).

such, ISPs are already well equipped to handle these routine requests.

### C.    Absence of Alternative Means to Obtain the Information

Although F & D's agents are able to observe Defendants' infringing activity through forensic software, Plaintiff is unable to access Defendants' identifying information, other than IP addresses.  [Ex. 5, Wyde Decl. ¶ 6.] Nor is Plaintiff able to upload a file onto Defendants' computers or otherwise communicate with Defendants in a manner that would provide notice of suit.  Hence, the Plaintiff must contact the Defendants' ISP to learn the subscriber's information in order to communicate with Defendants and/or amend the Complaint to use Defendants' true names.

But Plaintiff cannot simply ask the ISP for the requested information. Under the Cable Communications Policy Act of 1984, as amended, Federal statute generally prohibits an ISP from providing personally identifiable information to Plaintiff and requires that the ISP take affirmative acts to protect such information:

> [A] cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator.

47 U.S.C. § 551(c)(1)(B).  As such, the ISP requires a subpoena to release

the name and address of subscribers.  *Id.* § 551(c)(2).

Moreover, time is of the essence.  Per statue, an ISP will destroy personal information if, among other things there is not a pending court order to access the information.  *Id.* § 551(e) ("A cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information . . . pursuant to a court order.").  Therefore, if the subpoenas are not allowed and issued quickly, the subscriber information may be permanently lost.  *See Qwest Comms. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (App. at 4) (recognizing expedited discovery may be appropriate if "physical evidence may be consumed or destroyed with the passage of time").

### D.    Need for the Subpoenaed Information to Advance the Claim

The information that Plaintiff seeks to subpoena from the ISPs is necessary to advance its claims against the infringers.  Because the ISPs are not named Defendants, this is not a case of whether to provide immediate access to the requested discovery rather than postponing its ultimate production until the normal course of discovery.  Rather, the information requested is a prerequisite needed so that: (1) the Defendants may be

notified so that he or she may answer; (2) the Court may have a complete and informed Case Management Conference with Defendants present; and (3) litigation, including normal discovery, can commence.  The subscriber information simply must be identified before this suit can progress further.

### E.    Plaintiff's Interest in Obtaining the Defendants' True Identities Outweighs Defendants' Interest in Remaining Anonymous

Plaintiff has a strong and legitimate interest in protecting its copyrighted content and has established it cannot advance its claims without the ability to identify the individuals responsible for downloading and distributing Plaintiff's copyrighted movie.  In contrast, Defendants cannot make a sound claim to retaining their anonymity.

First, Defendants have little expectation of privacy because they have diminished these expectations by voluntarily opening their computers and sharing information to other users through P2P file sharing.  *In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 267 (D.D.C. 2003), *rev'd on other grounds*, *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ("[I]f an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially opening the computer to

the world.").

Second, Defendants were on notice that their personally identifiable information was subject to disclosure for behavior that would hail them into court.  For example, Comcast's Privacy Notice announces that:

> For subscribers to our high-speed Internet, phone, and home security services, Comcast may be required to disclose personally identifiable information and individually identifiable CPNI [customer proprietary network information] to a private third party in response to a court order.

[Exhibit 3, Comcast Customer Privacy Notice, *available at* https://www.xfinityprepaid.com/customer_agreement/-customer_%20agreement.html.]    Similarly, Time Warner's Subscriber Privacy Notice states:

> Federal law also requires us to disclose personally identifiable information to a governmental entity or other third parties pursuant to certain legal process.  Generally, this process requires a court order . . .

[Exhibit 4, Time Warner Cable Subscriber Privacy Notice, *available at* https://help.twcable.com/twc_privacy_notice.html.]

Indeed, the Cable Act requires ISPs to regularly notify customers of the possibility of this disclosure. § 551(1)(a) (specifying disclosure at the time of entering into an agreement to provide service and at least once a

year thereafter).

Third, "to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by others, the First Amendment is no protection." *W. Coast Prods.*, No. 4:12-cv-00504 (Doc. 30) (App. at 8) (citing *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 567 (S.D.N.Y. 2004) ("[D]efendants' First Amendment right to remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims.")).

Fourth, it is standard procedure for ISPs to provide subscribers with sufficient time to make an appearance to object to the disclosure of the subscriber's information, request a protective order, or request other relief. Therefore, if the defendants wish to argue that their information should not be disclosed, they will have an opportunity to be heard.

## VI.   CONCLUSION

As shown above, every factor the Court considers when determining if good cause exists militates in favor of allowing the pre-26(f) conference discovery.  Therefore, F & D respectfully requests the Court to grant its motion.  A proposed Order is attached.

Dated: __May 17, 2016__          Respectfully submitted,
                                   _s/Joshua S. Wyde/_____

Joshua S. Wyde, Attorney-in-Charge
 Tex. State Bar No. 24060858
 S.D. Tex. Bar No. 873284
 THE LAW OFFICE OF JOSHUA S WYDE
 710 N. Post Oak Rd. Suite 105
 Houston, TX 77024–3808
 Tel: 713.482.1916
 Fax: 713.466.6563
 jwyde@wydelegal.com

Gary J. Fischman
 Tex. State Bar No. 787469
 S.D. Tex. Bar No. 17126
 FISCHMAN LAW PLLC
 710 N. Post Oak Rd. Suite 105
 Houston, TX 77024–3808
 Tel: 713.900.4924
 fischman@fischmaniplaw.com

Attorneys for Plaintiff,
Fathers & Daughters Nevada, LLC

## CERTIFICATE OF SERVICE PER LR5

As the true identities of the defendants are unknown at this time, service is not possible and this motion is being filed *ex parte*.

## CERTIFICATE OF CONFERENCE
## PER COURT PROCEEDURE 4.A.1

Plaintiffs do not know the identity of the defendants, and, as such, are unable to confer.